James P. JOHNSON, Appellant,

v.

Roy H. DALE, et al., Appellees.

No. 10–91–147–CV.

Court of Appeals of Texas,
Waco.

July 22, 1992.

John Roberson, Hill, Parker & Johnson, Houston, for appellant.

Thomas K. Dougherty, Dougherty Law Firm, P.C., Tyler, Gayle Wilson Ray, Buffalo, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

The court entered a declaratory judgment that Roy Dale, James Henson, and Texas Royalty Corporation have a roadway easement across James Johnson's land by deed, estoppel, prescription, necessity, and implication and enjoined Johnson from interfering with its use. Johnson appeals and we affirm the judgment after reforming it.

## BACKGROUND

The plat below is a composite of maps produced by the parties' surveyors, aerial photographs, and other exhibits. It shows the property of the parties, an existing roadway across Blocks 4 and 5 that connects Dale's property to Highway 79, and a 30–foot easement purportedly located along the east boundary line of Block 3.

Vincent DeSalvo (not a party to this proceeding) owns Block 3. James Johnson owns Blocks 4 and 5. Roy Dale's property, which covers several blocks north of the Union Pacific Railroad track, is shown as one parcel. Dale's property south of the railroad track is not shown except to locate Henson's property. James Henson's 114–acre tract is south of the railroad track and is not depicted except for its northwest corner.

Texas Royalty has an oil and gas lease on Dale's property and needs access to two producing oil wells it drilled on Dale's property north of the railroad track. Dale has given his permission for Texas Royalty to use the road across Blocks 4 and 5. The company's right to use the roadway thus depends upon Dale's right of use.

The property of Mack and Mary Jackson (not parties to this proceeding), lying north of the railroad track and south and east of

Block 5, is shown only because Johnson claims that Dale, Henson, and Texas Royalty have access to F.M. 832 by an existing roadway across the Jackson property.

### EASEMENT BY DEED

The court declared that Dale, Henson, and Texas Royalty have an easement across Johnson's property (Blocks 4 and 5) under a 1956 deed from S.H. Moore to E.C. Dale and L.M. Kidd, Roy Dale's predecessors in title. The 1956 deed described the easement as follows:

> A strip of land 30 ft. wide, *being the East 30 ft. of Block 3* of a subdivision of the B.B.B. & C. R R Co. Sur[vey], ...; said 30 ft. strip extending in a straight line across land owned by S.H. Moore in the A. Bridges Survey to a strip of land owned by Homer Johnson.

(Emphasis added). As noted above, the plat shows the easement along the east boundary line of DeSalvo's Block 3.

Dale, Henson, and Texas Royalty contend the deed is latently ambiguous because their extrinsic evidence established that the easement, if located along the east 30 feet of Block 3, could not be extended in a straight line from Dale's property to Highway 79 across property then owned by Homer Johnson. Thus, they argue, the court properly admitted extrinsic evidence to show that Moore really intended to describe the existing roadway across Blocks 4 and 5.

■ The description in the deed unambiguously locates the easement along the east line of Block 3. Extrinsic evidence, which can only be used in aid of the description in the deed, is not admissible to contradict that description. *See Smith v. Sorelle*, 126 Tex. 353, 87 S.W.2d 703, 705 (1935). It cannot be used to prove that Moore really intended to describe a different tract of land. *See Coffee v. Manly*, 166 S.W.2d 377, 380–81 (Tex.Civ.App.—Eastland 1942, writ ref'd). Accordingly, the court erred when it ruled as a matter of law that Dale, Henson, and Texas Royalty have an easement by deed across Blocks 4 and 5. We sustain point one. Point two, which alleges that Moore could not have conveyed an easement across Blocks 4 and 5 because he did not then own those blocks, is not reached.

### PRESCRIPTIVE EASEMENT

■ The court declared that Dale, Henson, and Texas Royalty were entitled to use the roadway across Blocks 4 and 5 under a prescriptive easement. A person acquires a prescriptive easement by the open, notorious, continuous, exclusive, and adverse use of someone else's land for ten years. *Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979). Johnson contends in points three and four that the evidence is legally and factually insufficient to establish, in particular, that the use of the road was under an adverse claim of right.

The evidence does not reflect when the existing road was first established or used to access the Dale or Henson property. Roy Dale could recall the road being used as early as 1938 by his family, by "nesters" in the area, and by the general public to connect the Dale property with Highway 79, which was built in the early 1930s. A 1940 aerial photograph shows the road already apparent on the ground, beginning at the Dale property and crossing what is now Blocks 4 and 5. Aerial photos taken in 1960 clearly show the existing roadway connecting the Dale property to Highway 79 by a county road.

James Henson said that he and his family had continuously used the road since 1937 to reach Highway 79 from the Henson property. Since the highway's construction in the 1930s, other practicable means of access to the Dale or Henson properties—i.e., bridges that once spanned Buffalo Creek—were abandoned as alternate routes. The 1940 aerial photo, according to Henson, showed the road as it existed in 1937.

Dale and Henson both testified that people "just used the road" on a continuous basis without asking anyone's permission. That type of use continued, the evidence shows, from at least 1937 until James Johnson blocked the roadway in 1989. There is no evidence that anyone ever sought or

obtained anyone's permission to use the road.

■ Johnson contends the use was not adverse because Dale, Henson, and Texas Royalty never produced any evidence that (1) the road was used to the exclusion of the owners of what is now Blocks 4 and 5, or (2) that anyone had ever notified the owners that the road was being used under a claim of right. The evidence established a long-standing, open, unmolested, and continuous use of the roadway far in excess of the ten years necessary to acquire a prescriptive easement. This raised a rebuttable presumption that the use was non-permissive, under a claim of right, and thus adverse. *See Schultz v. Shatto*, 150 Tex. 130, 237 S.W.2d 609, 613 (1951). Johnson failed to produce any rebuttal evidence showing that the use was permissive or concurrent with the owners of the servient estate during the prescriptive period. At most, the evidence presented a fact question whether the use was exclusive, non-permissive, and adverse, issues that the court impliedly resolved against Johnson.

Thus, the court did not err when it declared that Dale, Henson, and Texas Royalty have the right to use the road across Blocks 4 and 5 under a prescriptive easement. Points three and four are overruled.

## IMPLIED EASEMENT

■ The court ruled that Dale, Henson, and Texas Royalty have a right to use the existing road across Blocks 4 and 5 under an implied easement appurtenant. An implied easement attaches to the dominant estate (Dale's land) when it is severed from the servient estate (now Johnson's land) if use of the servient estate is apparent and necessary to the use of the dominant estate. *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex.1963). Use of the servient estate by the dominant estate must be (1) apparent and existing at the time of severance of the two estates, (2) continuous enough that the parties must have intended its use to pass with the dominant estate; and (3) reasonably necessary to the comfortable enjoyment of the dominant estate. *Id.* at 207–08. In his fifth

and sixth points, Johnson contends the evidence is legally and factually insufficient to support a finding of necessary or apparent use of the road at the time Dale's land was severed from what is now Johnson's land.

■ E.C. Dale (Roy Dale's father) and L.M. Kidd purchased the property now owned by Roy Dale in 1938 from S.H. Moore, with Moore retaining ownership of what is now Johnson's property, Blocks 4 and 5. Thus, severance of the dominant and servient estates occurred in 1938. James Henson testified that the road was in existence, apparent on the ground, and being used to access his property and the Dale property as early as 1937. He said that the 1940 aerial photograph, showing the road across what is now Blocks 4 and 5, is the way the road appeared in 1937.

Dale and Henson both testified that use of the road was necessary because it was the only practicable way to reach their property. They have had no other practicable means of access, they said, since Highway 79 was constructed in the early 1930s and the bridges across Buffalo Creek were abandoned as alternate routes. Both acknowledged, however, that they occasionally use a road across Mack and Mary Jackson's property to reach F.M. 832, but insisted that it is inadequate to move heavy farm equipment or trucks hauling cattle to or from their property or for Texas Royalty's large tank trucks to service the wells on the Dale property. Necessity must be determined at the time of severance—1938. The evidence does not show that the road across the Jackson property was even in existence in 1938. In any event, use of the Jackson road depends upon the permission of the Jacksons and is not used under a claim of right.

This evidence is legally and factually sufficient to support implied findings that use of the road was apparent and reasonably necessary to the comfortable enjoyment of Dale's and Henson's property in 1938, the time of severance. Points five and six are overruled.

## EASEMENT BY NECESSITY

The court also declared that Dale, Henson, and Texas Royalty have an easement by necessity across Blocks 4 and 5. An essential element of an easement by necessity is that use of the servient estate by the dominant estate must be necessary at the time the two estates are severed. *Koonce v. Brite Estate,* 663 S.W.2d 451, 452 (Tex.1984). Johnson questions in point seven whether the evidence is legally and factually sufficient to establish either the date of severance or that a necessity existed at the time of severance for the road to be used to access Dale's property.

As already noted, the evidence established the date of severance of the dominant and servient estates as August 1938, when S.H. Moore conveyed the Dale property to E.C. Dale and L.M. Kidd, while retaining ownership of what is now Blocks 4 and 5. We have just reviewed the evidence showing that a necessity of use existed at that time in the dominant estate. We overrule point seven.

## HENSON'S RIGHT TO AN EASEMENT

The court declared that James Henson has an easement across Johnson's land. Johnson contends in point nine that Henson is not entitled to an easement because his property, which is located south of the railroad track, is not adjacent to Blocks 4 and 5 and that the road's use cannot be extended to Henson's property.

As recounted in our discussion of prescriptive easement, the evidence shows that since 1937 Henson, his family, and members of the general public have used the road as a means of access from Highway 79 to the Henson property, which is contiguous to Dale's property, and that this use was open, non-permissive, continuous, unmolested, exclusive, and adverse. Thus, the evidence was legally and factually sufficient to establish Henson's right to a prescriptive easement across Johnson's property. Point nine is overruled to the extent it complains about a prescriptive easement in Henson's favor.

However, the ninth point is sustained to the extent it attacks the evidentiary support for Henson having either an easement by necessity or by implication. There is no evidence that there was ever a unity of title of Henson's and Johnson's land, which is a necessary prerequisite to easements by necessity and by implication. *See Estate of Waggoner v. Gleghorn,* 378 S.W.2d 47, 48 (Tex.1964); *Ulbricht v. Friedsam,* 159 Tex. 607, 325 S.W.2d 669, 676 (1959).

## DISPOSITION

We have determined that the judgment is correct as to Dale and Texas Royalty on at least three independent grounds—easement by prescription, by implication, and by necessity—and as to Henson on the ground of prescriptive easement. Therefore, we do not reach point eight questioning whether the judgment is supportable on the ground of easement by estoppel. Nor do we reach the second point, relating to easement by deed, because of our disposition of point one. Our sustaining of point one relating to easement by deed does not require a reversal, however, because the judgment is correct on other grounds. We overrule without discussion points ten and eleven alleging that the court should have ruled in Johnson's favor and granted him attorney's fees. In any event, these complaints were waived because they were not raised in the trial court. *See* TEX.R.APP.P. 52(a).

We reform the judgment by deleting the portions granting Dale, Henson, and Texas Royalty an easement by deed and Henson easements by necessity and by implication. Otherwise, the judgment is affirmed as reformed.