IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00291-CV

 

Mark Montange and 

Kim Montange,

                                                                      Appellants

 v.

 

Eldora Hagelstein and 

Chris Hagelstein,

                                                                      Appellees

 

 

 



From the 220th District Court

Hamilton County, Texas

Trial Court No. 04-10-00189

 



DISSENTING Opinion










 

          As more people buy tracts of land in
remote areas of Texas, the more we must deal with the legal issues related to
access to those tracts.  One of the common sources of access is by way of a
dirt road along the side of or across someone else’s property.  Frequently, the nature and frequency of travel is significantly altered from the prior use of
the road because the new owner’s use of the property being accessed is
different than the prior owner’s use of the same tract.  Likewise, ownership of
the tract being crossed is likely to have changed.  At some point, the new
owner of the tract being crossed tries to obstruct the road or to prevent
access across the property.

          It is about this time that one of the
landowners contacts a lawyer, and what was once a couple of neighbors working
together to survive in rural Texas is now a lawsuit.  Almost invariably, there
are multiple theories of a right to cross one tract to access another.  Both
sides of the litigation begin to research the history of the two affected
tracts.  The tract being accessed finds the elderly witnesses that have some
memory of using the road for access as a child and that have no memory of any
other access. Sometimes, they may also recall a fence, or a gate, or
improvements.

          And, because of the nature of the
issue, the owners of the tract being crossed try to find anybody that can
remember other uses of the road, prior owners who gave permission, or other
evidence that defeats one or more elements of each legal theory that would otherwise
allow someone to cross the property.

          Then come the surveyors that place a
definition on the physical location of the road.  It defines both size and
location across the tract.  It is reduced to a nice printed plat.

          Then there are the pictures; pictures
of a dirt road, an old fence, a gate.

          All this evidence is dumped on a fact
finder for distilling a legal theory on which access is granted or denied.  The
inevitable appeal will assert various theories for access arguably supported by
the record and the response will be that all the elements of none of the
theories were proven.  It is, generally, the same legal problem for the
appellate court whether access is granted or denied.

          A fairly typical case is the Scott
case from Austin.  Scott v. Cannon, 959 S.W.2d 712 (Tex. App.—Austin
1998, pet. denied).  Another case, one decided by this Court, is Johnson. 
Johnson v. Dale, 835 S.W.2d 216 (Tex. App.—Waco 1992, no pet.).  In Johnson
this Court addresses the various legal theories, the elements, and the sufficiency
of the evidence of the various elements.  We clearly identified the theories on
which the judgment was based.  This is important because the associated rights
under each theory upon which access is granted are different.

          This Court, however, departed from the
method we had used in Johnson in the case of Fagan.  Fagan v.
Crittenden, No. 10-04-00042-CV, 2005 Tex. App. LEXIS 1492 (Tex. App.—Waco Feb. 23, 2005, pet. filed) (mem. op.).  In Fagan, the majority pulled up
woefully short of the analysis we had traditionally conducted for the right of
access cases.  Fagan v. Crittenden, 166 S.W.3d 748, 749-750 (Tex.
App.—Waco 2005) (Gray, C.J., dissenting on denial of rehearing).  The majority
reviewed a single theory that would support access and stopped.  Id.

          I dissented because I did not believe
the elements of the theory had been proven, as found by the majority.  Id.  I also dissented because the majority had failed to review the other theories
and, thus, had failed to define the specific rights of access that had been
obtained, as well as the limitations on those rights.  Id.

          It is not surprising that this case,
decided by the same majority, is no different than Fagan.  First, they
rely on a novel argument accepted on one of various alternative theories of
access by the Austin Court of Appeals.  Scott v. Cannon, 959 S.W.2d 712
(Tex. App.—Austin 1998, pet. denied).[1] 
The Austin court had reviewed multiple theories of access.  They accepted an
argument that “exclusive use” for some types of access cases was different than
“exclusive use” for other types of access cases.  I do not believe that the
element of “exclusive use” changes based upon the nature of the case.  Thus, I
believe affirming access under the only theory reviewed by the majority in this
case is erroneous.

          And the majority reviewed only one of
the multiple theories.  Thus, the majority errs because it fails to address all
the issues necessary for disposition that are presented on appeal,  see Tex. R. App. P. 47.1, because an
affirmance on another theory, even if I am wrong on the exclusive use
evidence/element, would define additional or different rights regarding the
extent, nature, and duration of the access rights granted.  Thus, we are
required to review each theory properly presented.[2]
 Further, Appellants argued that the scope of the easement granted is greater
than the rights obtained under the theories, if any, upon which access was
granted.  I agree.  The access obtained by adverse use can be no greater than
the nature of the access engaged in to obtain the right.  The grant of access
for “all purposes” of ingress or egress would be an unrestricted right and
could greatly exceed the use of a single owner if the property was used for
some other purpose – like a residential subdivision.




Conclusion

          Because the majority makes the same
errors in this case, as they did in Fagan, I respectfully dissent.[3]

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Dissenting
opinion delivered and filed March 15, 2006

Publish          









[1]
It is not surprising that the petition was denied in Scott.  Because
there were multiple theories under which access was being granted, there was
not a compelling need to resolve the issue discussed below regarding whether
“exclusive use” meant different things for different types of cases.  In Scott,
the Austin court determined all the cases in which joint use defeated an
easement by prescription were decided on the basis that exclusive use was the
only basis on which to prove adverse use.  This is the theory being adopted by
the majority.  The problem with this theory is that the majority has confused
two elements – exclusive use and adverse use.  The Supreme Court has
consistently treated them as different elements – so will I.





[2]
  If it is shown that the rights under two
theories are identical, it would be proper to decide if access is proper under
either theory.  If a right to access is found on one of the two – it would then
be acceptable to not review another theory that would yield identical rights.





[3] 
Because the precedential value of Fagan,
i.e. the rule of stare decisis, does not apply until the decision is
final, it is appropriate to continue to note my dissent.  Brooks v. First
Assembly of God Church, 86 S.W.3d 793, 798 (Tex. App.—Waco 2002, pet.
denied) (Gray, J., dissenting), overruled by, Binur v. Jacobo,
135 S.W.3d 646, 651 (Tex. 2004).








which he does not realize are defamatory.
      This is not the situation in this case. Carter contacted a friend, T.W. Goodlow, with regard
to employment as a substitute teacher in the Houston Independent School District (HISD). 
Goodlow worked previously for HISD and offered to help Carter gain employment. Carter
communicated to Goodlow that he was terminated for sexual harassment and stated in his
deposition that he thought Goodlow told HISD about his being terminated for sexual harassment
but cannot be sure. The record is clear that Carter knew the nature of the allegations against him
when he communicated with Goodlow in 1992. Thus, the summary judgment proof establishes
as a matter of law that Carter was aware of the defamatory nature of the statements at issue when
he made them to Goodlow. The Restatement provision does not apply. Accordingly, we overrule
point two.
      The judgment of the trial court is affirmed.
                                                                   REX D. DAVIS
                                                                   Chief Justice

Before Chief Justice Davis
            Justice Vance and
            Justice Gray
Affirmed
Opinion delivered and filed February 14, 2001
Do not publish