COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOHN P. BOERSCHIG, | § | No. 08-09-00071-CV |
| Appellant, | § | Appeal from the |
| v. | § | 394th District Court |
| SOUTHWESTERN HOLDINGS, INC., | § | of Presidio County, Texas |
| Appellee. | § | (TC# 6599) |
| | § | |

## **O P I N I O N**

John Boerschig appeals the trial court's judgment in favor of Southwestern Holdings, Inc. (SHI), stemming from his suit for trespass, injunctive, and declaratory relief. We affirm in part and reverse in part.

## **BACKGROUND**

In the early 1900s, John A. Poole owned a sizeable ranch named La Cienega.[1] The northern portion of that ranch, now known as the McCracken Ranch, was later sold to the McCrackens in 1930. In 1950, Poole's son, Hart Greenwood, purchased La Morita, a western property adjacent to La Cienega.

---

[1] As a map may be helpful to understanding the properties and roads involved, we have attached one for convenience.

Forty years later, SHI bought the Cibolo Creek Ranch, which abutted the northwest area of the McCracken Ranch, and developed the property into a resort. And in 1992, SHI bought La Morita and La Cienega, and renovated those properties into resorts, as well. Frances Harper, Greenwood's daughter, retained a portion of the original Poole ranch located to the east of La Cienega, and SHI later purchased a portion of that property as well in 2000, known as the Harper Ranch.[2]

Meanwhile, ownership of the McCracken Ranch vested to McClurg and Kelly, and in 1999, they sold the ranch to Wolverine Ventures, who transferred the ranch to John Boerschig the following year. Boerschig now operates the ranch for cattle ranching and hunting. He later sued SHI over the use of two roads, namely, the Tinaja-China Road and the Morita Road, which as explained below, cross the parties's respective ranches.

*The Tinaja-China Road*

From Highway 67, access to the McCracken Ranch and Cienega Ranch is had by the Tinaja-China Road, which first crosses the eastern part of the Cibolo Creek Ranch and then a portion of the McCracken Ranch. Prior to Ventures' purchase of the McCracken Ranch, SHI attempted to have the Presidio County Commissioners Court declare the Tinaja-China Road a public road, but the Commissioners Court declined, recommending that the private parties, that is, SHI and the owners of the McCracken Ranch, McClurg and Kelly, resolve the issue among themselves. Accordingly, in October 1993, the parties executed the following reciprocal easement:

---

[2] The Harpers retained ownership of Rancho Quemado, an adjacent ranch located to the east of Harper Ranch.

> For adequate consideration, the receipt and sufficiency of which is acknowledged and confessed, Southwestern hereby Grants and Conveys to McCracken, their heirs, successors and assigns, and McCracken hereby Grants and Conveys to Southwestern, its successors and assigns, an easement 30 feet in width for the purpose of ingress and egress to and from McCracken Tinaja China Ranch and Cibolo Creek-Cienega Ranch, respectively, over, across and upon the New Road described in this Agreement for its full length as described herein. Such easement shall be appurtenant to the McCracken Tinaja China Ranch and to the Cibolo Creek-Cienega Ranch, each such ranch being more particularly described on the attached Exhibit "A".

Following the agreement, McClurg and Kelly never objected to SHI's or its guests' use of the road to access its resort at Cienega.

*The Morita Road and Fence*

The Morita Road runs from an old fort located on La Cienega Ranch to another fort on La Morita Ranch. As the road passes through the Morita Canyon, the road crosses onto the McCracken Ranch for 2,200 feet. Prior to a survey completed in 2001, Boerschig simply assumed the entire road belonged to SHI as did all prior property owners in the area. Indeed, from 1950 to 1992, the road was not open to the public but used on a regular basis and exclusively by the Greenwoods, who also exclusively improved and maintained the road. Similarly, SHI used and maintained the road exclusively since it purchased the Cienega and Morita ranches, and Boerschig, prior to obtaining the survey, only used the road with SHI's permission.

The survey also concluded that a small portion of a fence that SHI erected in 1992 near the renovated buildings on La Morita was actually on the McCracken property.

*The Suit*

Boerschig sued SHI, alleging, among other things, that: (1) SHI trespassed by using a

3

portion of the Morita Road that was on his property; (2) SHI violated the express easement by using it for its invitees to access a resort rather than a ranch, and to access nonappurtenant properties; and (3) SHI trespassed by erecting a fence on the Morita Road. Boerschig moved for injunctive and declaratory relief, asking the court to declare that portion of the Morita Road his, to enjoin SHI's trespasses, and to determine the scope of the express easement. Boerschig further moved for damages based on permanent and temporary injuries, and exemplary damages. SHI generally denied the allegations, claimed it had an easement by estoppel, implication, or prescription on the Morita Road, alleged that Boerschig's fence claims were barred by standing and limitations, and also moved for declaratory relief concerning the language in the express easement.

<em>Boerschig's Summary Judgment</em>

SHI later counterclaimed that it had an implied easement by existing use or necessity across the Tinaja-China Road and that the express easement had been impliedly dedicated to the public. Boerschig moved for summary judgment on SHI's most recent counterclaims, contending that SHI failed to show any evidence that met the elements for an implied easement by existing use or necessity, that any implied easement terminated when the express easement was entered into, and that there was no evidence that the easement was impliedly dedicated to the public. Boerschig also filed a motion to dismiss SHI's counterclaim for implied public dedication, arguing that SHI lacked standing to bring such an action. In response, SHI asserted that there were genuine issues of material fact concerning whether: (1) there was an implied easement before the express easement issued; (2) the implied easement ended when the express easement was signed; and (3) there was an implied public dedication of the easement in question.

4

The trial court granted Boerschig's motion for summary judgment.

*SHI's Summary Judgment on Declaratory Action for Express Easement*

SHI moved for summary judgment as to the declarations of the rights of the parties concerning the express easement. SHI's motion asserted that the express easement was: (1) an easement appurtenant; (2) a general easement for ingress and egress; (3) an easement not limited as to the purposes of such ingress and egress; and (4) an easement that included the right of the parties' guests, invitees, and licensees to use the easement. Boerschig stipulated that the easement was an easement appurtenant from the McCraken Ranch to the Cibolo Creek Ranch and Cienega Ranch, but contested whether the easement was appurtenant to access any of SHI's other properties. He also asserted that the easement was not a general easement that could be enlarged by changes in the use or character of SHI's property; rather, Boerschig alleged that the easement was limited by the intentions of the parties at the time the easement was entered into and that what is expressly not included in the easement is prohibited. The trial court granted SHI's motion for summary judgment and declared the express easement an easement appurtenant that is reciprocal in nature and grants each party a general right of ingress and egress, which extends to the parties' guests, invitees, and licensees. The trial court reserved all other rulings on the express easement, including Boerschig's requests for injunctive relief, for trial.

*SHI's Traditional Motion for Summary Judgment on Morita Road*

SHI also partially moved for traditional summary judgement, asserting that it had an easement by prescription on the Morita Road and that any fence trespass was barred by limitations. Boerschig responded that SHI's possession lacked any intention to appropriate and therefore, SHI was not entitled to an easement by prescription. Further, Boerschig retorted that

his action is not barred by limitations as the discovery rule applied. The trial court denied SHI's motion for summary judgment.

*SHI's No-Evidence Motion for Summary Judgment on Morita Road*

SHI also partially moved for a no-evidence summary judgment on grounds that Boerschig lacked standing to address the Morita Road and that he failed to show any damages. Boerschig objected to the limitations and standing arguments, and withdrew his claims for lost rental values, mental anguish damages, and actual damages resulting from walking. However, Boerschig claimed he was entitled to actual damages for driving on his land, nominal damages for walking trespasses, and exemplary damages for malicious trespasses. The trial court granted the summary judgment in part with regards to claims for lost rental values, mental anguish damages, and actual damages for any alleged walking or driving on Boerschig's property. The remaining claims went to trial.

*Bench Trial*

At the conclusion of trial, the court found that SHI had a prescriptive easement on the Morita Road, ruled that Boerschig bought the fence when he bought the property, and determined that Boerschig was not entitled to injunctive relief on the express easement. However, the trial court ordered SHI to pay $1 in nominal damages for trespass by foot and $100 in nominal damages for trespass by equipment on Boerschig's property.[3] The trial court further ordered that judgment be entered for SHI, that all relief requested and not expressly granted is denied, and that SHI recover its attorney's fees. The trial court's findings of fact and conclusions of law

---

[3] The trial court found that on two occasions, SHI's equipment traveled on the McCracken Ranch outside the boundary of the express easement, and that on another occasion, John Poindexter, the owner of SHI, walked across a portion of the McCracken Ranch to view the Lake Ranch. Neither party appeals these rulings.

6

declared that Boerschig lacked standing to sue for a trespass caused by the Morita fence and that his claim was barred by limitations, that Boerschig only presented a theoretical injury as to whether SHI used the express easement to access nonappurtenant properties, that SHI had an easement by prescription across the Morita Road, and that SHI could recover attorney's fees in the amount of $49,320.

## SCOPE OF EXPRESS EASEMENT

We begin with a discussion of Boerschig's second issue, which attacks SHI's use of the express easement to access its commercial resort at Cienega Ranch, a use that Boerschig asserts was not contemplated at the time the easement was entered into. In this regard, Boerschig claims that the trial court erred by failing to grant a declaratory judgment in his favor. Because the trial court granted SHI's motion for summary judgment and declared that the easement provided for a general right of ingress and egress that extended to SHI's invitees, we interpret Boerschig's argument as a challenge to the trial court's summary judgment.

### Standard of Review

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing a summary judgment, we indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operating Co.*, 164 S.W.3d at 661.

### Applicable Law

An easement is a nonpossessory interest in another's property that authorizes its holder

7

to use that property for a particular purpose. *Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). "A grant or reservation of an easement in general terms implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner." *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974).

When considering the terms of an express easement, we apply basic principles of contract construction and interpretation. *Marcus Cable*, 90 S.W.3d at 700. The contracting parties' intentions, as expressed in the grant, determine the scope of the interest conveyed. *Id.* at 700-01. We read the terms of an easement as a whole to reach an adequate interpretation of the parties intentions and to carry out the purpose for which the easement was created. *DeWitt County Elec. Coop. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). Any doubts about the parties' intent are resolved against the grantor, or servient, estate, and we adopt the interpretation that is the least onerous to the grantee, or dominant, estate in order to confer on the grantee the greatest estate permissible under the instrument. *See Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 665 (Tex. 1964); *CenterPoint Energy Houston Elec. LLC v. Bluebonnet Drive, Ltd.*, 264 S.W.3d 381, 388-89 (Tex. App. – Houston [1st Dist.] 2008, pet. denied).

*Application*

Citing *Marcus Cable*, Boerschig asserts that the easement may only be used as contemplated by the parties at the time the easement was entered into, that is, to access a ranch, not a commercial resort. In *Marcus Cable*, the Supreme Court construed an easement that granted an electrical utility permission to construct and maintain "an electric transmission or distribution line or system" over private real property. *Marcus Cable*, 90 S.W.3d at 699. Later, Marcus Cable obtained permission from the electrical utility to attach cable lines and wiring to

8

the utility's poles. *Id.* The private property owners sued, claiming that the cable company did not have a valid easement and that they had not consented to the placement of the cable lines across their property. *Id.* After determining that settled law had interpreted the terms "electric transmission" and "electric distribution" as referring exclusively to conveyances of electricity, the Supreme Court, relying on the specific language in the grant, held that the grant expressed in the easement encompassed only an "electric transmission or distribution line or system," not a use for cable television transmission. *Id.* at 703-04, 706. Thus, the Court concluded that the utility easement was limited to the purpose of conveying electricity and declined to permit a use by Marcus Cable that went beyond conveying electricity. *Id.* at 704.

Boerschig asserts that since the easement refers to the "McCracken Tinaja China Ranch," the "Cibolo Creek-Cienega Ranch," and the road as a "ranch road," the easement may only be used to access ranches, that is, a farm or establishment for rearing cattle and other stock, not to access commercial resorts. We disagree. The easement provides for a general right of ingress and egress. It does not provide that either party may only use the easement to access property that may only be used for those ranching purposes as claimed by Boerschig. Indeed, simply because the word "ranch" is contained in the title of a property does not mean that property is limited to such a use.[4] Thus, the holding in *Marcus Cable*, which concluded that language in the

---

[4] As SHI notes in its brief, several properties include the term "ranch" in their title when, in fact, no ranching operations take place on the property:

> "Fish Creek Ranch" is a commercial resort. *Seidler v. Morgan*, 277 S.W.3d 549 (Tex. App. – Texarkana 2009). "Ghost Mountain Ranch" and "R-Ranch" are commercial resorts. *Neeley v. Martin*, 2007 WL 853969 (Cal. App. 3 Dist. March 22, 2007); *McCall v. Couture*, 666 S.E.2d 637 (Ga. App. 2008). "Fantasy Ranch" is a sexually oriented business with nude dancers. *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 556 (5th Cir. 2006). "Rio Ranch" is a restaurant. *Sieker v. State*, 1994 WL 599451 (Tex. App. – Houston [1st Dist.] November 03, 1994). "Texas Boys Ranch" was "a home for boys who had been having problems with the law." *Richardson v.*

9

easement limiting its use solely to "electric transmission" is inapplicable.

Further, although the properties may be labeled ranches or the road a "ranch road," those names are not sufficient by themselves to limit the easement's use to access only ranch properties, that is, to limit what the owners of the respective estates can do with their property. Indeed, an easement granted for general purposes of ingress and egress includes not only the use required at the time of the grant, but also the right to use the easement for any purpose connected to the use of the property. *See Shipp v. Stoker*, 923 S.W.2d 100, 103 (Tex. App. – Texarkana 1996, writ denied) (finding dominant estate could be used for both residential and business purposes when general easement contained no restrictions on its use). Absent any expressed language limiting or negating what the owners may do on their properties, we decline to hold that simply labeling the properties ranches or the road a ranch road is sufficient by itself to limit the properties to ranching operations only. *See Bradshaw v. Lower Colorado River Auth.*, 573 S.W.2d 880, 883-84 (Tex. Civ. App. – Beaumont 1978, no writ) (easement that granted "right of ingress and egress across said land . . . [to] reach the water's edge" was not limited solely to cattle grazing but also included the right to use the water for recreational purposes); *San Antonio Indep. Sch. Dist. v. City of San Antonio ex rel. San Antonio Water System*, 2004 WL 2450919, at *5 (Tex. App. – San Antonio Nov. 3, 2004, pet. denied) (mem. op., not designated for publication) (easement that provided "right of ingress and egress shall also be for the purpose of using said

*State*, 879 S.W.2d 874 (Tex. Cr. App. 1993). And, "Laurel Canyon Ranch," "River Mountain Ranch" and "Riata Ranch" are just a few examples of the numerous residential subdivisions called "ranches" throughout Texas. *See Edberg v. Laurel Canyon Ranch Architectural Review Committee*, 2009 WL 1089432 (Tex. App. – San Antonio, April 22, 2009); *In re Fallis*, 2009 WL 262119 (Tex. App. – San Antonio, February 04, 2009); *Cypress Northwest Associates, Ltd. v. Wayne Duddlesten, Ltd.*, 2008 WL 457847 (Tex. App. – Houston [1 Dist.], February 21, 2008).

10

land to access adjoining property currently owned by San Antonio Water System" was not limited only to the construction, maintenance, and other activities related to the water systems and facilities).

Finally, the evidence presented at trial demonstrated that the McCrackens were aware of SHI's intentions to use the properties as resorts prior to entering into the reciprocal easement.[5] The easement was executed on October 15, 1993. In 1990, SHI renovated the Favor fort ruins at Del Cibolo, and in 1992, it began similar renovations at Cienega and Morita. By the fall of

<hr/>

[5] Although we recognize that such evidence was not on file at the time the trial court entered its summary judgment, *see Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 374 (Tex. App. – San Antonio 1999, pet. denied); *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 323 (Tex. App. – Houston [1st Dist.] 1995, no writ) (trial court may only consider the evidence on file at the time of the summary judgment hearing or filed thereafter and before judgment with permission of the court), we may consider the evidence adduced at trial if a trial court reconsiders its previous ruling or prematurely grants summary judgment, which can be rendered harmless by subsequent events. *See Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (concluding that any error committed by granting summary judgment on insurance bad-faith and extra-contractual claims was harmless because jury's finding in subsequent proceeding negated coverage, which was prerequisite for asserting bad-faith and extra-contractual claims); *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (holding that trial court rendered any error arising from its failure to give notice of submission date for motion for summary judgment harmless when it considered nonmovant's response and reconfirmed its prior ruling on the motion); *McAlester Fuel Co. v. Smith Intern., Inc.*, 257 S.W.3d 732, 736-37 (Tex. App. – Houston [1st Dist.] 2007, pet. denied) (holding that any error in trial court's grant of partial summary judgment on claims of breach of contract, negligence, negligent misrepresentation, and DTPA claims was harmless when the issue of whether defendant was shielded from liability under the terms and conditions contained on the backside of the job tickets was fully litigated at trial).

Here, the trial court reserved any issues enjoining SHI's use of the easement for trial. After hearing the trial evidence, the court denied the injunction and seemingly reaffirmed its prior summary-judgment order:

> With respect to the other road, to the Tinaja-China Road, the Court finds that way back before Mr. Boerschig came along, Mr. Poindexter and his company got in there. They began their operations. The same objection that was made by Mr. Boerschig was made at that time by the McCracken Ranch people about the use of the road. They got into some kind [of] dispute. They went through whatever procedure they went through, and I am not going to get into the details of that. But as a result of that, they eventually worked out an expressed agreement to be able to use that road where I am assuming those – that the Court finds, for the increased usage that, in fact, that he wanted to use it for. And so it's a bargained-for thing. And I am not going to grant any injunction against him using the Tinaja-China Road.

Therefore, we may consider the evidence adduced at trial in determining whether the trial court's premature grant of summary judgment was harmless.

11

1993, the Cibolo resort was substantially complete, and SHI was "late in the process" at Cienega and Morita. Meanwhile, McClurg and Kelly disagreed with SHI over the use of the Tinaja-China Road, and that dispute went to the Presidio County Commissioner's Court in August 1993. With the owners of the McCracken Ranch present, SHI explained its need for access to the Cienega Ranch, which it had developed into a "guest facility." The parties later entered into an easement agreement in October. Thus, the easement was entered into with knowledge that SHI would use its properties as commercial resorts. *Marcus Cable*, 90 S.W.3d at 701 ("[A]n easement 'should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created.'") (quoting Restatement (Third) of Property (Servitudes) § 4.1).

Based on our discussion, we find no reversible error in the trial court's order granting summary judgment in favor of SHI. Accordingly, Issue Two is overruled.

## ACCESS TO OTHER PROPERTIES

Boerschig's first issue complains of the trial court's determination that SHI did not use or allow others to use the express easement to access nonappurtenant properties. The trial court determined that there was not a real and concrete dispute about use of the express easement to access other properties and ruled that Boerschig was not entitled to a declaratory judgment on this ground, having only presented a theoretical injury.

### *Standard of Review*

A declaratory judgment is available only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham*

12

*State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id*. (quoting *Bexar-Medina-Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Protection Ass'n*, 640 S.W.2d 778, 779-80 (Tex. App. – San Antonio 1982, writ ref'd n.r.e.). Although a justiciable controversy need not be a fully ripened cause of action, the fact situation must manifest the ripening seeds of a controversy to confer jurisdiction. *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153-54 (Tex. App. – Austin 1998, no pet.) (citing *Ainsworth v. Oil City Brass Works*, 271 S.W.2d 754, 761 (Tex. Civ. App. – Beaumont 1954, no writ)). Ripening seeds of a controversy "appear where the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between such parties as to their legal rights have not reached the state of an actual controversy." *Ainsworth*, 271 S.W.2d at 761. However, a declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication. *Empire Life Ins. Co. v. Moody*, 584 S.W.2d 855, 858 (Tex. 1979); *Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App. – Austin 2002, pet. denied). Otherwise, the judgment amounts to no more than an advisory opinion, which the district court does not have power to render. *Tex. Health Care*, 94 S.W.3d at 846.

### Application

Boerschig first alleges that SHI attempted to allow others to use the easement to access nonappurtenant properties. In this regard, Boerschig claims that SHI allowed the Harpers to use

13

the road to access Rancho Quemado, but nothing in the record shows that the Harpers used the easement, and in fact, when the Harpers sold a portion of their ranch to SHI, the deed did not include any use of the easement, and the trial court found that SHI did not grant or give permission to the Harpers to use the easement. Boerschig also contends that SHI engaged the Texas Department of Parks and Wildlife (TDPW) for access to properties it owned south of Cienega Ranch by way of the easement if SHI succeeded in purchasing a portion of those properties; however, those talks fell through, and the trial court, after considering that evidence, determined that SHI did not provide or attempt to provide TDPW with employee or public access across the McCracken Ranch. In short, Boerschig appears to base his arguments on the possibility that, sometime in the future, SHI may allow others to use the easement to access nonappurtenant properties. These, however, are hypothetical situations that are not ripe for consideration in a declaratory-judgment action. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2000) (because the plaintiffs were released from jail, they could not seek a declaratory judgment for a religious-education program at the Tarrant County Jail); *City of Anson v. Harper*, 216 S.W.3d 384, 394-95 (Tex. App. – Eastland 2006, no pet.) (because City had not received a requisite permit, plaintiff's declaratory judgment action was not ripe to the extent it sought an adjudication of the parties' rights if a permit was granted and the City proceeded with its landfill plans); *Hill v. Sportsman's World Recreational Ass'n, Inc.*, No. 11-08-00189-CV, 2010 WL 428555, at *2 (Tex. App. – Eastland Feb. 4, 2010, no pet.) (mem. op., not designated for publication) (whether, sometime in the future, a multi-family development may be constructed in the plaintiffs' subdivision and that the owners of such living units will not be charged any assessment, thereby placing a disproportionate burden on the owners of the other lots, addresses a

14

hypothetical situation and, thus, is not ripe for consideration in a declaratory judgment action of levying assessments against each residential lot).

Nevertheless, Boerschig also claims that SHI used the easement to access the Harper Ranch, a nonappurtenant property. Indeed, Poindexter expressly testified that he uses the express easement to travel from Cibolo Creek Ranch to the Harper Ranch. But a grantee may not use an easement to access nonappurtenant properties that he owns, that is, to access properties adjacent to the dominant estate but not adjacent to the servient estate. *Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979); *see also Bickler v. Bickler*, 403 S.W.2d 354, 359 (Tex. 1966) ("Where, in connection with a transfer of property, an easement is granted for the benefit of that property over lands of the grantor, the easement is presumed to be appurtenant to the granted premises, and in the absence of words creating a more extended right the grantee or his successor in interest is not entitled to use the easement for the benefit of other premises owned by himself or another."). Thus, SHI may not use the easement to access nonappurtenant properties. And logically, if SHI cannot use the easement in this way, neither can its invitees. The trial court should have entered a declaratory judgment in favor of Boerschig on this ground. Accordingly, Issue One is sustained.

## PRESCRIPTIVE EASEMENT

In his third issue, Boerschig challenges the sufficiency of the evidence to support the trial court's determination that SHI obtained a prescriptive easement over the disputed section of the Morita Road located on his property. After reviewing the evidence, we find sufficient evidence to support the trial court's ruling.

*Standard of Review*

15

A trial court's findings of fact in a bench trial "have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App. – Dallas 1997, writ denied) (en banc). Because legal and factual sufficiency of the evidence standards of review govern appeals of non-jury trials on the merits, it is incumbent upon the appealing party to attack the findings by appropriate legal and factual sufficiency points of error. *Carrasco v. Stewart*, 224 S.W.3d 363, 366-67 (Tex. App. – El Paso 2006, no pet.). "When a party appeals from a non-jury trial, it must complain of specific findings and conclusions of the trial court, because a general complaint against the trial court's judgment does not present a justiciable question." *Id*. at 367.

In conducting a legal-sufficiency review, we consider evidence in the light most favorable to the trial court's findings and indulge every reasonable inference that would support them. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. However, in a factual-sufficiency review, we consider and weigh all of the evidence and will "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In conducting our reviews, we are mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony, and that it is within his exclusive province to resolve any conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819; *Precision Homes, Inc. v. Cooper*, 671 S.W.2d 924, 929 (Tex. App. – Houston [14th Dist.] 1984, writ ref'd n.r.e.).

*Applicable Law*

16

An easement by prescription rests on the claimant's adverse actions under color of right. *Allen v. Allen*, 280 S.W.3d 366, 377 (Tex. App. – Amarillo 2008, pet. denied); *Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App. – Austin 1998, pet. denied). A person acquires a prescriptive easement by the open, notorious, continuous, exclusive, and adverse use of someone else's land for ten years or more. *See Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979). The party claiming the existence of a prescriptive easement has the burden of proof to establish each element by a preponderance of the evidence. *Tiller v. Lake Alexander Properties, Ltd.*, 96 S.W.3d 617, 624 (Tex. App. – Texarkana 2002, no pet.) (citing *Brooks*, 578 S.W.2d at 674). Here, Boerschig only contests the open, exclusive, adverse, and ten-year period elements, and thus, we restrict our review to those elements only.

*Openness*

In challenging the openness element, Boerschig attacks the trial court's finding that the Greenwoods used the road from the 1950s until March of 1992. According to Boerschig, the use could not have been open because the land was wild, unenclosed, unimproved, and vacant. But whether the area was desolate does not equate to a finding that the *use* of the road itself was not open. Indeed, our focus is on whether the "evidence established a long-standing, open, unmolested, and continuous *use* of the roadway" in excess of the ten years necessary to acquire a prescriptive easement. *Johnson v. Dale*, 835 S.W.2d 216, 219 (Tex. App. – Waco 1992, no pet.) (emphasis added).

In *Johnson*, the court found open and continuous use when the evidence showed that the dominant estate's owners, nesters in the area, and the public used the road without permission to reach a public highway from the 1930s until 1989. *Id*. at 218-19. We find similar open use

17

here. The Greenwoods openly and continuously used the road from the 1950s until their property was sold to SHI in 1992, using the road to haul salt and feed by iron wheel wagon and later by pickup truck. After selling the property to SHI, SHI's employees daily used the road until 2002. Moreover, during this period of use, the Greenwoods and SHI maintained and improved the road. We believe that is sufficient evidence to support the trial court's finding that the use of the Morita Road was open.

*Exclusive*

Boerschig next challenges the exclusivity element, contending that the claimants' mere subjective beliefs that they owned the road was insufficient to establish exclusive use. However, an adverse possessor's claim cannot be defeated by lack of knowledge of the deficiency in record title or a realization that there may be other claimants to the land when his possession and use is actual, visible, and exclusive. *Calfee v. Duke*, 544 S.W.2d 640, 642 (Tex. 1976); *Julien v. Baker*, 758 S.W.2d 873, 877 (Tex. App. – Houston [14th Dist.] 1988, writ denied) (appellee's claim of right is not defeated by her lack of knowledge of the error in the survey when her possession and use was actual and visible); *Boyle v. Burk*, 749 S.W.2d 264, 267 (Tex. App. – Fort Worth 1988, writ denied) (by entering the lot with the intent to claim it as his own and by maintaining the lot openly, possessor's claim of right not defeated even though the disputed strip of land was not part of his property). Thus, whether the Greenwoods or SHI actually owned the disputed area is inapplicable where, as more fully discussed below, they used and maintained the road to the exclusion of others.

Boerschig argues that the use was not exclusive, noting that Ted Harper, Frances' husband, testified that others used the Morita Road, that anybody who needed to use the road

18

would have been able to use it, and that the road was too remote to notice whether anyone else was using the road. However, other testimony established that only the Greenwood family used the road from 1950 to 1992, and that SHI used the road exclusively from 1992 until 2002. Prior to SHI's purchase, if anyone else used the road without their permission, the Greenwoods would "halt them and question them and ask them why and put them off of it . . . ." And after SHI purchased the property, Boerschig asked for permission to use the road. The trial court, in considering all the evidence, was free to resolve any conflicts and choose which witnesses to believe. *City of Keller*, 168 S.W.3d at 819-20. By choosing to disbelieve that portion of Harper's testimony and to believe other evidence presented in the record, we defer to the trial court's determination of credibility and the resolution of conflicting evidence, and therefore, we cannot say, based on the evidence presented, that insufficient evidence supports the trial court's finding of exclusive use.

### Adverse

In challenging the adversity element, Boerschig argues that there was no evidence that the claimant's usage put the true owner on notice that a hostile claim was asserted, nor was there any evidence of adverse usage. "The hostile and adverse character of the use necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession." *Mack v. Landry*, 22 S.W.3d 524, 531 (Tex. App. – Houston [14th Dist.] 2000, no pet.) (*citing Othen v. Rosier*, 148 Tex. 485, 226 S.W.2d 622, 626 (1950)). In determining whether a claim is hostile, we consider "whether the adverse possessor's use, occupancy, and possession of the land is of such nature and character as to notify the true owner that the claimant is asserting a hostile claim to the land." *Mack*, 22 S.W.3d at 531. Hostile use, however, "does

19

not require an intention to dispossess the rightful owner, or even know that there is one." *Tran v. Macha*, 213 S.W.3d 913, 915 (Tex. 2006).

The testimony established that parts of the Morita Road were visible from several vantage points from the McCracken Ranch. After the Greenwoods bought the ranch in the 1950s, only the Greenwood family used the Morita Road because "no one else dared to come in there" unless they first received the Greenwood's permission. Further, the road was not only maintained exclusively by the Greenwoods, but they also enclosed the road with a fence on one side and a gate on one end. If anyone appeared on the road without permission, the Greenwoods would stop and remove them from the road. After SHI bought the ranch, SHI exclusively improved and maintained the road. This was sufficient evidence for the trial court to conclude that the use was adverse. *See Cherokee Water Co. v. Freeman*, 145 S.W.3d 809, 818 (Tex. App. – Texarkana 2004, pet. denied); *Nickels v. Casburg*, No. 03-05-00027-CV, 2009 WL 1708830, at *15-16 (Tex. App. – Austin June 18, 2009, pet. denied) (mem. op., not designated for publication) (cases finding sufficient evidence to support prescriptive easement when claimants consistently used and maintained disputed area such that owner's predecessor should have noticed that a hostile claim was being asserted).

*Ten Years*

Finally, Boerschig contests the requisite limitations period. According to Boerschig, because he filed the suit three days prior to SHI's ownership of the property for ten years, SHI failed to meet the requisite ten-year limitations requirement. However, adverse possession does not have to continue in the same person to satisfy the requisite limitations period. *Masonic Bldg. Ass'n of Houston, Inc. v. McWhorter*, 177 S.W.3d 465, 472 (Tex. App. – Houston [1st Dist.] 2005, no pet.); *Parker v. McGinnes*, 842 S.W.2d 357, 360 (Tex. App. – Houston [1st Dist.] 1992, writ denied). Rather, the ten-year requirement may be established by tacking successive interests if there is "privity of estate between each holder and his successor." TEX. CIV. PRAC. & REM. CODE ANN. § 16.023 (Vernon 2002); *First Nat. Bank of Marshall v. Beavers*, 602 S.W.2d 327, 329 (Tex. Civ. App. – Texarkana 1980, no writ) (permitting tacking for establishing a prescriptive easement). As noted previously, the Greenwoods adversely used the road from the 1950s until SHI purchased the ranch in 1992. Thus, SHI was entitled to tack the Greenwoods' claim onto its usage to satisfy the requisite limitations period. *Beavers*, 602 S.W.2d at 329. The trial court's findings that SHI met the ten-year period is sufficiently satisfied by the record.

Having concluded that there was legally and factually sufficient evidence presented to establish the open, exclusive, and adverse use of the Morita Road for more than ten years, SHI obtained a prescriptive easement across the disputed area of the road. Accordingly, Issue Three is overruled.

**FENCE TRESPASS**

Boerschig's fourth issue contends that the trial court erred by failing to enjoin the fence from trespassing onto his land. The trial court found that: (1) the fence was already on the

McCracken Ranch when Boerschig purchased the ranch and had been on the ranch for well more than four years; (2) the fence had not caused any new injury to Boerschig since his purchase; (3) Boerschig did not have standing to assert a trespass claim; and (4) any trespass claim is barred by limitations. We address standing first.

Texas courts have held that "[w]here injury to land results . . . the right of action for all the damages resulting from the injury accrues to the owner of the land at the time the thing that causes the injury commences to affect the land."[6] *Vann v. Bowie Sewerage Co.*, 127 Tex. 97, 90 S.W.2d 561, 562 (1936); *Senn v. Texaco, Inc.*, 55 S.W.3d 222, 225 (Tex. App. – Eastland 2001, pet. denied). "The right to sue for the injury is a personal right that belongs to the person who owns the property at the time of the injury." *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex. App. – Tyler 2002, pet. denied); *Senn*, 55 S.W.3d at 225-26; *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686 (Tex. Civ. App. – Austin 1980, writ ref'd n.r.e.); *City of Dallas v. Winans*, 262 S.W.2d 256, 259 (Tex. Civ. App. – Dallas 1953, no writ); *Williams v. State*, 177 S.W.2d 106, 109 (Tex. Civ. App. – Waco 1943, writ ref'd).

Here, Boerschig was not the owner of the property when the fence was installed; however, he relies on the discovery rule to confer standing. The discovery rule is a narrow exception applicable only to defeat the requisite statute of limitations, that is, the rule operates to toll the limitations period when an injury is both inherently undiscoverable and objectively verifiable. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004). The

---

[6] Trespass is an injury to land caused by one not rightfully in possession. *See R.C. Bowen Estate v. Continental Trailways, Inc.*,152 Tex. 260, 256 S.W.2d 71, 72 (1953); *Hexamer v. Topographic Land Surveyors*, No. 05-97-00108-CV, 1999 WL 114390, at *2 (Tex. App. – Dallas Mar. 4, 1999, no pet.) (op., not designated for publication).

discovery rule is not applicable in cases where the subsequent property owner lacks standing to sue for an injury to land that occurred prior to passage of title. *Senn*, 55 S.W.3d at 225. Absent any evidence showing Boerschig bargained for an assignment of the prior owner's possible causes of action for injuries to the land that occurred before his purchase, he cannot rely on the discovery rule to defeat his lack of standing. *Id*.; *Vann*, 90 S.W.2d at 562. Because Boerschig did not own the property when the injury occurred, he lacks standing, and the trial court did not err by failing to enjoin the fence from encroaching on Boerschig's land. Issue Four is overruled.

**ATTORNEY'S FEES**

Boerschig's final issue contests the award of attorney's fees in the amount of $49,320. According to Boerschig, counsel only testified to $37,403.71 in fees, and therefore, Boerschig concludes that the trial court's award is not supported by sufficient evidence. Boerschig also contends that should he prevail on any issues before this Court, we should reverse the award for reconsideration in light of our opinion.

*Standard of Review*

The Texas Uniform Declaratory Judgments Act allows the trial court discretion to award reasonable and necessary attorney's fees that are equitable and just. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008); *Elijah Ragira/VIP Lodging Group, Inc. v. VIP Lodging, Inc./Elijah Ragira*, 301 S.W.3d 747, 757 (Tex. App. – El Paso 2009, pet. denied); *Murphy v. Long*, 170 S.W.3d 621, 622-23 (Tex. App. – El Paso 2005, pet. denied). Whether the fees are reasonable and necessary are questions of fact, whereas whether the fees are equitable and just are questions of law. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Further, the award is not dependent on a finding that a party prevailed in the action. *Id*. at 20; *Barshop v. Medina*

23

*County Underground Water Conservation District*, 925 S.W.2d 618, 638 (Tex. 1996).

We review a trial court's decision to grant or deny attorney's fees for an abuse of discretion. *See Bocquet*, 972 S.W.2d at 21; *EMC Mortgage Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App. – Austin 2005, pet. denied). In so doing, we view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in its favor. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444 (Tex. App. – Houston [14th Dist.] 2003, no pet.); *Phillips & Akers, P.C. v. Cornwell*, 927 S.W.2d 276, 279 (Tex. App. – Houston [1st Dist.] 1996, no writ). We will only find an abuse of discretion when the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).

## *Application*

Here, counsel testified that his total fees incurred in the case was $65,084.27. Of that amount, 40 percent, or $26,033.71, was incurred in pursuing and defending the express easement for declaratory judgment. Approximately $37,900 was incurred for trial expenses after summary judgments were granted and denied. And of that amount, 40 percent, or $15,160, was spent prosecuting the prescriptive easement, and thirty percent, or $11,370, was spent prosecuting access to other properties across the express easement for declaratory judgment. On cross-examination, counsel, somewhat confused, stated that he was asking the court for $26,033 and $11,370 for trial expenses but then indicated that a total of $37,012.21 was incorrect. The court recognized counsel's fallacy and allowed counsel the opportunity to examine his records. Counsel then disclosed that there was an additional $28,000 that was billed but had not been disclosed.

24

Recognizing that the trial court may resolve conflicting testimony on fees, we discern no abuse of discretion in awarding $49,320, which was less than the total of what the evidence allowed as $37,403.71 related to prosecuting and defending the declaratory judgment actions on the express easement, and $15,160 was spent prosecuting the prescriptive easement. *See Estate of Degley v. Vega*, 797 S.W.2d 299, 304 (Tex. App. – Corpus Christi 1990, no writ); *Texas Mut. Ins. Co. v. Durst*, No. 04-07-00862-CV, 2009 WL 490056, at *6 (Tex. App. – San Antonio Feb. 25, 2009, no pet.) (mem. op., not designated for publication) (when presented with conflicting evidence, trial judge, as the fact finder, was within his discretion in awarding the attorneys' fees in the manner and amount in which he did). Therefore, we conclude sufficient evidence supports the trial court's award of attorney's fees.

Nevertheless, Boerschig contends we should remand the case for reconsideration of attorney's fees in light of our disposition under Issue One. Although a party need not prevail to recover attorney's fees under the Act, *see Bocquet*, 972 S.W.2d at 20, after a declaratory judgment is reversed on appeal, an award of attorney's fees may no longer be equitable and just. *See Sava gumarska in kemijska industria d.d. v. Advanced Polymer Sci., Inc.*, 128 S.W.3d 304, 323 (Tex. App. – Dallas 2004, no pet.); *Fitzgerald v. Antoine Nat'l Bank*, 980 S.W.2d 228, 232 (Tex. App. – Houston [14th Dist.] 1998, no pet.). Given our disposition of Issue One, we remand the award of attorney's fees to the trial court for its reconsideration in light of our opinion.[7]

---

[7] Given the wide discretion afforded to the trial court in awarding attorney's fees under the Act, there would certainly be no abuse of discretion if the trial court, on remand, refused any award of attorney's fees to Boerschig and instead, decided to award SHI the same amount in attorney's fees even though SHI did not prevail on the declaratory judgment action as set out in this opinion. *See Bocquet*, 972 S.W.2d at 20.

## CONCLUSION

Having sustained Boerschig's first issue, we reverse the trial court's order refusing a declaratory judgment on Boerschig's claim concerning SHI's use of the easement to access nonappurtenant properties and render a declaratory judgment proscribing such use. In addition, we remand the case to the trial court to reconsider the award of attorney's fees in light of our decision. We affirm the trial court's judgment in all other respects.


_____

                    GUADALUPE RIVERA, Justice

August 11, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

26



Hwy 67

Cibola Creek Ranch

Plateau

Southwest Holdings

Tinaja China Road

Boerschig; McCracken Ranch

Shafter

Harper Ranch

Southwest Holdings

Morita

Southwest Hodings

Cienega / Morita Ranch

Morita Road

McCracken Ranch

Southwest Holdings

Most recent acquisition by Southwest Holdings

RR 169 (Casa Piedra Rd)

RR 151 (River Road), 15 mi

Miles

0    1    2            4

27