**Motion for Rehearing Denied; Motion for En Banc Consideration Denied as Moot; Affirmed in Part; Reversed in Part and Remanded, and Substitute Opinion filed December 17, 2019.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-17-00278-CV

---

**BILL GREEN, HANS VAN DER VOORT, PHIL BIRKELBACH, AND PAUL KATES, Appellants**

**V.**

**RICHARD D. DAVIS, L.L.P., A NEVADA LIMITED LIABILITY PARTNERSHIP, RICHARD D. DAVIS, L.L.P., A TEXAS GENERAL PARTNERSHIP, AND PATRICIA K. SUAREZ, Appellees**

---

**On Appeal from the 506th Judicial District Court
Waller County, Texas
Trial Court Cause No. 08-12-19600**

---

## S U B S T I T U T E   O P I N I O N

Appellees Richard D. Davis, L.L.P., a Nevada Limited Liability Partnership, Richard D. Davis, L.L.P., a Texas General Partnership, and Patricia K. Suarez filed a motion for rehearing and a motion for en banc reconsideration of our opinion

issued on April 23, 2019. Appellants responded. We deny rehearing, withdraw our opinion of April 23, 2019, issue this substitute opinion, and vacate our judgment of April 23, 2019. Accordingly, we deny the motion for en banc reconsideration as moot.[1]

This appeal arises from a judgment entered January 10, 2017, upon a jury verdict in the trial court, and is one of three appeals before this court involving the same parties.[2] For the reasons stated below, we affirm in part and reverse and remand in part.

## BACKGROUND

In 1993, Richard D. Davis, L.L.P., a Texas General Partnership, ("Davis Texas") purchased a 55-acre tract from Sky Lakes, Inc., that was secured by a deed of trust. Skydiving was allowed at the airport. It was either conducted directly by a Davis entity or by leasing the airport to other operators.

In 2006, the promissory note was assigned to the Sky Lakes Flyers Foundation ("SLFF"). Shortly thereafter, SLFF sent notices of default based on various allegations, including failure to provide proof of insurance and payment of taxes, and the condition of the property. In August 2007, Davis Texas brought suit (the "2007 suit") against SLFF and Carbett J. Duhon, III, seeking a temporary restraining order, temporary injunction and permanent injunction and asserting a claim for breach of contract.

---

[1] *See Giesberg v. State*, 945 S.W.2d 120, 131 n. 3 (Tex. App.—Houston [1st Dist.] 1996), aff'd, 984 S.W.2d 245 (Tex. Crim. App. 1998).

[2] Already decided by this court are Appeal No. 14-17-00257-CV, arising from a no-evidence summary judgment entered January 4, 2017, in the trial court cause, Cause No. 08-12-19600-A; and Appeal No. 14-17-00372-CV, arising from a summary judgment entered in the trial court, Cause No. 07-08-18999 on April 7, 2017.

2

In September 2007, SLFF refused Davis Texas' check for the August 2007 payment on the grounds the note had been accelerated. Davis Texas obtained injunctive relief to prevent foreclosure and in September 2007 refinanced at an interest rate of fourteen and a half percent (14.5%) rather than the original rate of five percent (5%) and transferred its' interest in the property to Richard D. Davis, L.L.P., a Nevada Limited Liability Partnership, ("Davis Nevada").

On September 19, 2007 SLFF counterclaimed and named Richard D. Davis and Patricia K. Suarez as third-party defendants. SLFF asserted breach of contract and sought a non-judicial foreclosure on the property. In March 2008, the skydiving assets were sold to Todd Bell and Jump-Out Express. A lease was entered into permitting Jump-Out Express to conduct skydiving operations. Subsequently, suit was brought in 2008 (the "2008 suit") by Andy Knott, Bill Green, Dempsey Gearen, Jim Phillips, Phil Birkelbach, Paul Kates, Danny Langhorne, Hans van der Voort, Gene Morton and Stanley Hoffpauir (collectively "the Green Parties"), against Davis Nevada, Davis Texas and Patricia K. Suarez (collectively "the Davis Parties"), and Jump Out Express, L.L.C. Among other claims, the Green Parties alleged skydiving operations had increased and unreasonably interfered with the ability of others to use the airstrip. The Davis Parties filed a counterclaim and third-party action on March 3, 2009 seeking damages for the alleged orchestration of the "wrongful" acceleration of the note and the ensuing "illegal" efforts to foreclose.

By order signed February 4, 2010 the Davis Parties' counterclaims in the 2008 suit were severed ("the 2010 suit"). The Green Parties settled with Jump Out Express prior to trial. The claims that remained in the 2008 suit were tried to a jury and judgment was entered on January 10, 2017. From that judgment, certain members of the collective "Green Parties" bring this appeal, namely Bill Green, Hans van der Voort, Phil Birkelbach, and Paul Kates (for ease of reference we refer to appellants

3

in this opinion as "the Green Parties"). The Davis Parties filed a notice of cross-appeal.

## THE GREEN PARTIES

The Green Parties raise three issues. We address each in turn.

I.  *Did the trial court disregard the jury's answer to Question 2?*

Relevant to the Green Parties' first issue are the following portions of the court's charge:

> QUESTION NO. 1
>
> As to the airstrip in question, did the skydiving operations prior to March 21, 2008 unreasonably interfere with, or impair its use by others?
>
> Answer "Yes" or "No."
>
> ANSWER:  no
>
> QUESTION NO. 2
>
> As to the airstrip in question, did the skydiving operations beginning March 21, 2008 unreasonably interfere with, or impair its use by others?
>
> Answer "Yes" or "No."
>
> ANSWER:  yes

After question No. 2, there was a follow-up to question No. 1:

> If you have answered Question No. 1 "Yes," then and only in that event, answer Question No. 3.
>
> ### Question No. 3
>
> By what date did the [Green Parties] know, or should have known, that the sky dive operations unreasonably interfered with or impaired their right to use the airstrip for aviation purposes?
>
> Answer giving month, day, and year, if any.
>
> ANSWER:  _____
>
> Month, Day, and Year

4

In the judgment, the trial court granted the following declaratory relief requested by the Davis Parties:

[11.]B. The Davis Partnerships, and their partners' use of the Sky Dive Houston Airport and its airstrip for sky diving is in conformity with Federal Aviation Administration ("FAA") Regulations and does not unreasonably interfere with the rights of any lot owners in Sky Lakes Addition Section I or Sky Lakes Addition Section II to use the airstrip as allowed by any restrictions or dedications in force or effect which are currently binding on the property.

[11.]C. The use of the airstrip and airport property for skydiving purposes is a lawful aviation use of the airspace over the airstrip and airport owned by Davis Nevada Limited Liability Partnership and is a use for aviation purposes of the premises which does not unreasonably interfere with any other aviation use of the airstrip. Plaintiffs and Counter-Defendants, as individuals, have no power to regulate or dictate the manner in which a lawful aviation use is conducted on the airstrip or airport. The restrictions as written do not prohibit the aviation use of skydiving. Plaintiffs and Counter-Defendants have no superior aviation rights to the airstrip, but must share the airstrip in common with all other users including the public users who are business invitees of the Davis Defendants.

[11.]D. The use by the Davis Partnerships, and their partners, of the Sky Dive Houston Airport and airstrip for sky diving activities in conformity with FAA Regulations in the manner proven before the jury in this case by testimony and evidence does not constitute a substantial annoyance to any lot owners or home owners in Sky Lakes Addition Sections I and II.

[11.]E. The Davis Partnerships, and their partners' use of the Sky Dive Houston Airport and its airstrip does not impermissibly "dominate" the Sky Dive Houston Airport or airstrip in any manner nor violate any restrictions or dedications which are in force and effect that define and/or restrict the use of said airport and/or said airstrip.

In their first issue, the Green Parties assert these four declarations ignore the jury's finding that skydiving activities at the airport after March 21, 2008 unreasonably interfered with their rights. The Green Parties acknowledge, as they

5

did in the trial court, that the skydiving activities at the airport substantially increased beginning March 2008 when Jump Out Express began operating its skydiving business. The Green Parties claim declaration 11.B should state:

> The Davis Partnerships, and their partners' use of the Sky Dive Houston Airport and its airstrip for sky diving beginning March 8, 2008 unreasonably interfered with the rights of lot owners in Sky Lakes Addition Section I or Sky Lakes Addition Section II to use the airstrip.

As to declarations 11.C, 11.D, and 11.E, the Green Parties assert they should be reversed and stricken from the judgment.

The Davis Parties argue the trial court correctly disregarded the jury's answer to Question No. 2 because it was irrelevant since the Green Parties settled with Jump Out Express before trial. The trial court declared, and the Green Parties do not challenge, the trial court's finding in 11.G. as to the operations conducted by Jump Out Express LLC:

> [11.]G. Defendants, Suarez and the Davis Partnerships, are not liable for any claims concerning the former operations of Jump Out Express, L.L.C. , the Davis Partnership's prior tenant, as a matter of law based on lease of airport property.

The jury found skydiving operations unreasonably interfered with use of the airstrip by others beginning in March 2008, during the tenancy of Jump Out Express, LLC. The trial court's declarations to the effect that the Davis Parties' use of the airstrip did not unreasonably interfere with use of the airstrip by others is supported by the jury's answer to Question No. 1. The trial court's declarations are not inconsistent with the jury's answers, because the answers reflect the skydiving operations that unreasonably interfered with or impaired the landowners' right to use the airstrip, were conducted during the tenancy of Jump Out Express. Accordingly, issue one is overruled.

6

II.    *Did the trial court err by declaring the Green Parties were barred by prescription and limitations from complaining that the skydiving activities violated their rights to use the airstrip?*

At trial, the Davis Parties asserted the Green Parties were barred from complaining that skydiving activities interfered with their easement rights, because the skydiving operations had been ongoing for more than ten years before the Green Parties filed suit.

The charge of the court instructed the jury as follows:

> "Peaceful Possession" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property.

> "Prescription" means actual and visible use of real property for a particular purpose or purposes, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

> "Privity of Estate" means privity of ownership which exists between successive owners when the earlier owner's rights to possession and claim to the land passed or was transferred to the latter owner by agreement, deed, lease, gift, devise, or inheritance.

> You are instructed that peaceable prescription need not be continued in the same person or entity, but, when held by a different persons or entities, successfully; there must be a privity of estate between them.

The charge submitted to the jury was:

### QUESTION NO. 8

> Did Defendants and those with whom they have privity of estate, either in person or through tenants, have openly, notoriously, and peaceably, use of the air strip in question for parachute and skydiving operations for a period of ten consecutive years prior to the date of filing this suit?

> Answer "Yes" or "No."

> ANSWER:  <u>yes</u>

The Green Parties specifically complain of the following declarations by the trial court relative to prescription and limitations:

[11.]F. The [Green Parties'] claims concerning [the Davis Parties'] alleged interference with their rights to use the 55-acre airport or airstrip are barred by prescription.

. . .

[11.]L. Any right that [the Green Parties] had to prevent skydiving activities by [the Davis Parties'] utilizing a Twin Otter Aircraft, operating at full capacity or right to ban sky diving activities on the airport property as an "unreasonable interference" with the rights of lot owners to use the airport property or airstrip for aviation purposes, or that skydiving harassed and annoyed such lot owners while they were making aviation use of the airport, airstrip, and/or its facilities, was lost by [the Green Parties] under prescription. [The Davis Parties'] used the airstrip and airport to conduct skydiving activities with a Twin otter Aircraft carrying and dumping 20 to 23 skydivers per flight that landed on the airport and airstrip as an approved drop zone under FAA regulations for a continuous period of time from 1993, when R. D. Davis Limited Liability Partnership, a Texas General Partnership purchased the airstrip and airport, to at least 2007 - a period of time over ten (10) years. [The Davis Parties'] use of the Twin otter aircraft at full capacity was "open and obvious" to all lot owners in Sky Lakes Addition Sections I and II as well as notorious. The use of the airport for skydiving activities by smaller aircraft was also "open and obvious" and went on for more than ten consecutive years prior to the date the [Green Parties] filed suit. The ten (10) years statute of limitations bars any complaint by Counter-Defendants that sky diving or the level, intensity, or number of skydivers, violates any right they have to use the airstrip in question.

The Green Parties assert:

- "Davis LLP cannot obtain a prescriptive easement on property to which it holds title;"

8

- There is no evidence the Green Parties' easement rights were extinguished by "prescription" or "limitations" [3] because:

   o There is no evidence of adverse or hostile use for the statutorily-required 10-year period;

   o There is no evidence of exclusive use for the statutorily-required 10-year period;

   o There is no evidence of any notice of repudiation; and

- The Davis Parties failed to obtain the requisite jury findings on the above elements.

"To obtain a prescriptive easement one must use *someone else's land* in a manner that is open, notorious, continuous, exclusive, and adverse for the requisite period of time." *Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979) (emphasis added). Davis Nevada is the present title owner of the airport, which is subject to restrictive covenants burdening the estate with an easement benefiting the landowners. An easement is a right of use over another's property. *Cecola v. Ruley*, 12 S.W.3d 848, 852 (Tex. App.—Texarkana 2000, no pet.). The party holding title does not need an easement as to his own property. *See id*. "The principle is elementary that, to constitute an easement, the dominant and the servient estates must be held by different owners . . .." *Id*. (quoting *Howell v. Estes*, 71 Tex. 690, 693, 12 S.W. 62 (1888)); *cf. Tirado v. Tirado*, 357 S.W.2d 468, 474 (Tex. Civ. App.—Texarkana 1962, writ dism'd) ("When appellee had acquired title to all the surrounding properties, this brought about an extinguishment of the servitude created by the easements for ingress and egress and the merger of the easements into the estate held by appellee."). Because the property is owned by Davis Nevada, there

---

[3] Although the Davis Parties and the trial court also use the term "limitations," the jury charge reflects only an easement by prescription was contemplated at trial.

is no evidence to support the trial court's declaration that the Davis Parties obtained an easement by prescription as to the same property.

Furthermore, the record reflects the Green Parties objected to Question No. 8 at trial. The only objection that relates to the issues set forth above, however, is that the question failed to include the element of exclusive use. There was no objection by the Green Parties that the charge failed to include the elements of adverse or hostile use or repudiation.

When there is no objection to the charge, we measure the legal sufficiency of the evidence against the charge actually given. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002) (plurality op.); *Yeng v. Zou*, 407 S.W.3d 485, 489–90 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The Green Parties do not claim there was no evidence to support the jury's answers to the charge given. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no. pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards). Accordingly, in this appeal, we only consider the element of exclusive use.

As we noted above, "[t]o obtain a prescriptive easement one must use someone else's land in a manner that is open, notorious, continuous, *exclusive*, and adverse for the requisite period of time." *Brooks*, 578 S.W.2d at 673 (emphasis added); *see also Mack v. Landry*, 22 S.W.3d 524, 531 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (same); *Machala v. Weems*, 56 S.W.3d 748, 758 (Tex. App.—Texarkana 2001, no pet.) (same). The case cited by the Davis Parties urging adoption

10

of section 7.7 of the Third Restatement of Property does not eliminate the element of exclusive use to establish a prescriptive easement. *See* Restatement (Third) of Property (Servitudes) § 7.7. In *Werchan,* the court cited *Brooks*, 578 S.W.3d at 673, as requiring the party asserting the right to a prescriptive easement to prove they used the property in a manner that is exclusive. *Werchan v. Lakewood Estates Ass'n,* No. 03-08-00417-CV, 2009 WL 2567937, *4 (Tex. App.—Austin Aug. 21, 2009, pet. denied). The court concluded that evidence the Werchans relied on their perceived right to use the property in common with other property owners supported the trial court's failure to find they met the adversity and exclusivity elements of their prescriptive-easement claim. *Id.* at * 6.

In this case, the record reflects, and the Davis Parties do not dispute, that the Davis Parties use of the property was not exclusive. Accordingly, there is no evidence of one of the elements required to establish an easement by prescription.[4]

For these reasons, we sustain the Green Parties' complaint as to paragraphs F and L of subsection 11 of the final judgment.

III.    *Did the trial court err in its declarations regarding fees and usage?*

Declaratory judgments are reviewed in the same manner as other judgments. Tex. Civ. Prac. & Rem. Code § 37.010. "When a question of law is at issue, such as the review of an unambiguous restrictive covenant, our review is de novo." *Waterford Harbor Master Ass'n v. Landolt*, No. 14-13-00817-CV, 2015 WL 293262, at *2–3 (Tex. App.—Houston [14th Dist.] Jan. 22, 2015, pet. denied) (mem.

---

[4] On rehearing, the Davis Parties assert modification of easement by use under the Third Restatement of Property does not require exclusive use of the easement by the owner of the dominant estate. The Davis Parties cite no controlling authority adopting the Third Restatement of Property or interpreting it to eliminate the exclusive-use element. The Davis Parties cite *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984), as authority for this court to remand for a new trial under the correct theory of law "in the interest of justice," but the portion of the opinion relied upon by the Davis Parties is the dissent. Accordingly, we decline their request.

11

op.) (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Am. Gold Corp. v. Colburn*, 65 S.W.3d 277, 279 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). Our objective is to ascertain and give effect to the purposes and intent of the language of the restrictive covenant. *Id*. (citing *Wiese v. Healthlake Cmty. Ass'n*, 384 S.W.3d 395, 400 (Tex. App.—Houston [14th Dist.] 2012, no pet.)); *see also* Tex. Prop. Code § 202.003(a). If reversal is warranted, we render the judgment the trial court should have rendered, unless a remand is necessary for further proceedings. *See Lone Star Gas Co. v. R.R. Comm'n of Tex.*, 767 S.W.2d 709, 710 (Tex. 1989).

"Restrictive covenants are subject to the general rules of contract construction." *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 66 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *Pilarcik*, 966 S.W.2d at 478; *Wiese*, 384 S.W.3d at 400). When construing restrictive covenants, our primary goal is to ascertain and give effect to the intent of the drafters by using the language of the instrument as a guide. *Id*. Restrictive covenants are examined considering the circumstances present when they were written, affording words and phrases their commonly accepted meanings. *Id*. The trial court's interpretation of a restrictive covenant is reviewed de novo. *Id.*

The 1976 restrictions provide, in pertinent part:

> That we, . . . TRUSTEES, owners and developers of the subdivision . . . known as "Sky Lakes Addition, Sections I and II" . . . do hereby CONFIRM, REAFFIRM, COVENANT and AGREE that the air strip . . . herein referred to is hereby dedicated to and for the use of all persons owing [sic] land in said subdivision (hereinafter referred to as "land owners"), along with others that we, the undersigned, may from time to time authorize likewise and permit to use the same, upon the following terms, conditions and rules:
>
> 1.  There shall be no landing fees to land owners.

2. The undersigned Trustees shall from time to time establish and collect from all landowners reasonable up-keep fees for said air strip.

3. Air craft with a total weight in excess of _____ pounds will be prohibited, except in case of emergency. Also, balloons and other "lighter than air" air craft will be prohibited, except in case of emergency.

4. No one may use said air strip for any purpose except aviation and will not unreasonably interfer [sic] with or impair its use by others.

5. This dedication is a covenant running with the land in perpetuity.

. . .

The Green Parties make four complaints about multiple declarations. We address each complaint in turn.

A.    <u>Is there evidence to support declarations that the Davis Parties may bar the Green Parties from using the airport for failure to pay for or perform maintenance?</u>

The Green Parties contest the following declarations:

[11.]A. The Plaintiffs and Counter-Defendants, as lot owners in either Sky Lakes Addition Section I or Sky Lakes Additions Section II, have no rights to use the airstrip in question in this case unless they pay a reasonable maintenance fee for the use of same or unless Plaintiffs complete all maintenance and repairs, deferred or future, on the Airstrip and facilities dedicated to their use as lot owners in the 1976 Amendment to the Deed Restrictions and Restrictive Covenants binding on Sky Lakes Addition Sections I and II lot owners.

. . .

[11.]I. The right of any lot owner in Sky Lakes Addition Section I or II to taxi, take off, or land, on the airstrip at the Sky Dive Houston Airport is subject to payment of a maintenance fee. Without payment of such maintenance fee, any lot owners of Sky Lakes Addition Sections I and II have no right to use the Sky Dive Airport I's airstrip for taxiing, landing, or taking off, in their aircraft.

. . .

13

[11.]K. The Defendants and Counter-Plaintiffs hold the right to maintain the airstrip located on the airport property and are entitled to collect a reasonable maintenance and/or upkeep fee from the Counter-Defendants which includes costs of labor, management, and materials.

Although the Green Parties include paragraph K in their list of declarations at issue, they fail to provide any argument in support of their position. Briefing waiver occurs when a party fails to make proper citations to authority or to the record, or to provide any substantive legal analysis. *See* Tex. R. App. P. 38.1(i); *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Sterling v. Alexander*, 99 S.W.3d 793, 798–99 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Even though the courts are to interpret briefing requirements reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of their argument. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Accordingly, as to paragraph K, this issue is waived.

As to paragraphs A and I, the Green Parties concede that the 1976 restrictions give the Davis Parties the right to assess reasonable fees for the upkeep of the airstrip. Their claim is that use of the airstrip is not tied to payment of the fees.

The Green Parties' argument presumes the declarations amount to an order of injunctive relief. The authority relied upon by the Green Parties involves specific performance of a contract for sale of land, *see O'Herin v. Neal*, 56 S.W.2d 1105, 1106 (Tex. Civ. App.—Texarkana 1932, writ ref'd); *Stevens v. Palmour*, 269 S.W. 1057 (Tex. Civ. App.—Waco 1925, no writ), and specific performance of a contract by injunctive relief, *Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 482 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Canteen Corp. v. Republic of Tex. Properties, Inc.*, 773 S.W.2d 398, 400 (Tex. App.—Dallas 1989, no writ). Thus, the suggestion

14

is that by declaring landowners do not have the right to use the airstrip if they fail to pay the assessed fees, the trial court has granted injunctive relief preventing use of the airstrip or has ordered the landowners to pay the fees.

The 1964 restrictions contain an enforcement provision which provides "[t]he present owners of this property, or any person holding under him . . . shall have the right to enjoin the violation of such conditions and restrictions, or to recover damages . . ." The Green Parties ignore the enforcement provision in the 1964 restrictions and therefore make no argument regarding its effect on this issue. However, in their statement of facts, the Green Parties acknowledge that the "ENFORCEMENT PROVISION" authorizes and empowers the property owners to enforce the restrictive covenants.

The 1976 restrictions expressly provide that the airstrip is "dedicated to and for the use of" the landowners "upon the following terms, conditions and rules." One of those enumerated terms is the collection "from all landowners reasonable up-keep fees for said airstrip." Accordingly, the plain language of the 1976 restrictions links the right to use the airstrip to payment of the fees and the 1964 restrictions expressly provide for enforcement by injunction. We therefore conclude the trial court's declarations as to paragraphs A and I of subsection 11 of the final judgment are supported by the evidence and overrule the Green Parties' complaint.

B.    <u>Did the trial court err by declaring non-owners may not use the airport property or airstrip for free</u>?

Next, the Green Parties contend paragraph M "lacks any basis in the deed restrictions or Texas Law." Paragraph M declares:

> [11.]M. The free use of the airport property and airstrip by nonlot owners in free fly-ins conducted by any lot owners in Sky Lakes Addition Sections I and II is a violation of the Deed Restrictions and

15

Restrictive Covenants applicable to Sky Lakes Addition Sections I and II as well as a breach of the restrictive covenants.

The Green Parties argue that in the absence of an express limitation otherwise, their right to use the airport without payment of landing fees is extended to "a reasonable number of . . . guests and invitees pursuant to Texas law." The Green Parties cite two Texas cases in support of their argument, *State v. Brownlow*, 319 S.W.3d 649, 654–56 (Tex. 2010), and *Boerschig v. Sw. Holdings, Inc.*, 322 S.W.3d 752, 761–62 (Tex. App.—El Paso 2010, no pet.). In *Brownlow*, the court agreed that "'an *unlimited* easement carries with it all rights as are reasonably necessary for enjoyment consistent with its intended use.'" 319 S.W.3d at 656 (quoting *Coastal Indus. Water Auth. v. Celanese Corp. of Am.*, 592 S.W.2d 597, 601 (Tex. 1979) (emphasis added)). And in *Boerschig*, the court again recognized that an easement was not limited "[*a*]*bsent* any express language." 322 S.W.3d at 761 (emphasis added).

At issue in this case is a restrictive covenant, which is a negative covenant, or negative easement, that limits permissible uses of land. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 432 S.W.3d 381, 394 (Tex. App.—San Antonio 2014, pet. denied) (citing Tex. Prop. Code tit. 11 ("Restrictive Covenants")). The easement is not unlimited; there is express language of limitation. The 1976 restrictions, as noted above, provide landowners may use the airstrip and authorize "others" to use it. The restrictions then expressly provide "[t]here shall be no landing fees to land owners." Thus, the restrictions limit free fly-ins to landowners. We therefore conclude the trial court's declaration as to paragraph M of subsection 11 of the final judgment is supported by evidence in the record. The Green Parties' complaint is overruled.

C. Is the trial court's declaration that landowners may be barred from using their easement for failure to comply with reasonable rules, regulations or restrictions advisory or supported by evidence in the record?

The Green Parties challenge the following declaration by the trial court:

> [11.]J. The Davis Nevada Limited Liability Partnership as owner of the Sky Dive Houston Airport and airstrip, retains the right to promulgate and enforce reasonable regulations, rules, and restrictions, for the management and use of the Sky Dive Houston Airport and its airstrip. All lot owners paying a maintenance and/or upkeep fee and using the airstrip on the fifty-five acres must obey such rules and regulations or face termination of their rights to use the airstrip.

The Green Parties first argue the trial court's declaration is an advisory opinion the trial court lacked jurisdiction to issue because there is no evidence they ever failed to comply with such rules, regulations or restrictions. The Green Parties assert there is no evidence the Davis Parties have promulgated any regulations, rules or restrictions, or that any landowners have failed to obey such. In response, the Davis Parties contend that as successors to the original developers, Sky Lakes Club, Inc., they are empowered to enact rules and regulations governing the management and use of the airstrip and other club facilities. Further, the Davis Parties assert the landowners are required to adhere to and obey such rules and regulations as a condition for use of the airstrip and other club facilities. The Davis Parties do not dispute that no regulations, rules or restrictions have ever been promulgated.

The Uniform Declaratory Judgments Act (UDJA) allows a person interested under a written contract, to request a determination of any question of construction or validity arising under the contract and to "obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a). Because the Act does not create or enlarge a trial court's subject matter jurisdiction, a declaratory judgment is appropriate only if a justiciable controversy exists as to the

17

rights and status of the parties, and the declaration will resolve the controversy. *Devon Energy Prod. Co., L.P. v. KCS Res., LLC*, 450 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also* Tex. Civ. Prac. & Rem. Code § 37.008 ("The court may refuse to render or enter a declaratory judgment or decree if the judgment or decree would not terminate the uncertainty or controversy giving rise to the proceeding."). "A justiciable controversy does not exist and an advisory opinion is being sought if a party requests a court to render a declaratory judgment premised upon the happening of a future, hypothetical event." *Stop 'N Go Markets of Tex., Inc. v. Exec. Sec. Sys., Inc. of Am.*, 556 S.W.2d 836, 837 (Tex. Civ. App.—Houston [14th Dist.] 1977, no writ). There being no evidence that any rules were ever enacted, the failure of landowners to obey said rules is only a future, hypothetical event about which the trial court's opinion is merely advisory. Accordingly, we sustain the Green Parties' complaint as to paragraph J of subsection 11 of the final judgment.

D.    <u>Are the trial court's declarations regarding the scope of permissible maintenance fees advisory or supported by the record</u>?

Lastly, the Green Parties contest the trial court's declarations in paragraphs H, K, and O of subsection 11 of the final judgment:

> [11.]H. The Davis Nevada Limited Liability Partnership as owner of the Sky Dive Houston Airport and the airstrip has the right to charge any lot owner in Sky Lakes Addition Section I or Section II a maintenance and/or upkeep fee for necessary maintenance and upkeep of the airstrip.
>
> . . .
>
> [11.]K. The Defendants and Counter-Plaintiffs hold the right to maintain the airstrip located on the airport property and are entitled to collect a reasonable maintenance and/or upkeep fee from the Counter-Defendants which includes costs of labor, management, and materials.
>
> . . .

18

[11.]O. The Davis Defendants have the right under the applicable Deed Restrictions of Sky Lakes Addition Sections I and II to charge a reasonable maintenance or upkeep fee to all lot owners in Sky Lakes Addition Sections I and II for all required maintenance on the airstrip.

As noted above, the Green Parties concede the restrictions expressly give the Davis Parties the right to "establish and collect from all landowners reasonable up-keep fees for said air strip." This concession, however, is inapplicable to paragraph K, about which the Green Parties again make no argument. Accordingly, as to paragraph K this issue is waived. *See Canton–Carter*, 271 S.W.3d at 931–32; *Sterling,* 99 S.W.3d at 798–99; *San Saba Energy*, 171 S.W.3d at 338; Tex. R. App. P. 38.1(i). Because the trial court's declarations in paragraphs H and O are advisory, we sustain the Green Parties complaints as to these declarations.

## THE DAVIS PARTIES

In their cross-appeal, the Davis Parties raise four issues. We address each in turn.

In their first issue, the Davis Parties assert:

The trial court erred when it granted summary judgment declaring (a) the entire 55-acre tract was dedicated for the benefit of appellant/lot owners instead of the air strip, swimming pool, tennis courts, and other "club facilities" located on a portion of the 55-acre tract, (b) appellees could not use the unrestricted portion of the servient estate for residential purposes, and (c) club facilities could not be used for any purpose other than aviation.

The Davis Parties fail to specify or include record references to the complained-of declarations. The only authority cited by the Davis Parties is the standard of review for declaratory judgments. It is not our duty to review the record, research the law, and then fashion a legal argument when a party has failed to do so. *Canton–Carter*, 271 S.W.3d at 931–32. Accordingly, the issue is waived. *See*

19

*Sterling,* 99 S.W.3d at 798–99; *San Saba Energy*, 171 S.W.3d at 338; Tex. R. App. P. 38.1(i).

The Davis Parties' second issue contends the trial court erred in awarding attorney's fees to the Green Parties pursuant to Tex. Prop. Code § 5.006[5] because the Green Parties were not the prevailing party. The final judgment reflects the Green Parties were awarded attorney's fees in the amount of $125,000, under the UDJA, based upon the trial court's order for partial summary judgment signed December 9, 2015, in their favor. *See* Tex. Civ. Prac. & Rem. Code § 37.002(b). The trial court also found the Davis Parties were entitled to attorney's fees through trial in the amount of $22,500 and reduced the award to the Green Parties by that amount.

The Davis Parties contend because they were the prevailing party, they should recover their entire attorney's fees and the Green Parties should recover none. In support, the Davis Parties cite *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 128 (Tex. App.—Corpus Christi 1999, pet. denied), and *WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657 (Tex. App.—Houston [1st Dist.] 2016, no pet.). In both cases, the court reviewed the trial court's decision to award attorney's fees to a "prevailing party" under a contractual attorney's fee provision. But in a declaratory judgment action, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac.

---

[5] Section 5.006 of the Texas Property Code, entitled "Attorney's Fees in Breach of Restrictive Covenant Action," provides:
(a) In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim.
(b) To determine reasonable attorney's fees, the court shall consider:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the expertise, reputation, and ability of the attorney; and
(4) any other factor.

& Rem. Code § 37.009. An award of attorney's fees under section 37.009 is clearly within the trial court's discretion and is not dependent on a finding that a party "substantially prevailed." *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996). Accordingly, we overrule the Davis Parties' second issue.

The Davis Parties' third issue contends the trial court erred in awarding attorney's fees to the Green Parties because they failed to present and/or have admitted into evidence fee statements/billings supporting their attorney fee claims. The trial court awarded the amount of attorney's fees determined by the jury to be reasonable and necessary. The Davis Parties do not contend the testimonial evidence of attorney's fees presented to the jury is insufficient and do not address that issue. The Davis Parties make no claim that the evidence failed to establish the fees were reasonable and necessary, but contend the Green Parties were not entitled to an award of attorney's fees, relying solely upon the fact that fee and/or billing statements were not introduced. "[P]roof of fees actually incurred or paid are not prerequisites to the recovery of attorney's fees in Texas." *AMX Enters., L.L.P. v. Master Realty Corp.,* 283 S.W.3d 506, 520 (Tex. App.—Fort Worth 2009, no pet.). The Davis Parties cite no authority to the contrary. Issue three is overruled.

Lastly, the Davis Parties argue the trial court erred in refusing to award, as damages, the temporary injunction bond posted by the Green Parties. A party who wrongfully obtains an injunction is liable to the party enjoined for damages caused by the injunction. *Ferguson v. Tanner Dev. Co.*, 654 S.W.2d 835, 837 (Tex. App.—Houston [14th Dist.] 1983, no writ). However, the Davis Parties' entire argument that the temporary injunction was wrongful is: "[r]eview of the temporary injunction establishes that the injunction obtained by [the Green Parties] was wrongful." This conclusory statement is not sufficient to support the Davis Parties' issue on appeal.

The issue is waived. *See Canton–Carter*, 271 S.W.3d at 931–32; *Sterling,* 99 S.W.3d at 798–99; *San Saba Energy*, 171 S.W.3d at 338; Tex. R. App. P. 38.1(i). Issue four is overruled.

**CONCLUSION**

The trial court's declarations in paragraphs F, L, J, H and O of subsection 11 of the final judgment are reversed. In all other respects, the judgment of the trial court is affirmed.

We remand the case for further proceedings in accordance with this opinion.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Wise, Hassan, and Poissant.